UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TECHNOLOGY SYSTEMS CONSULTING, LLC

                              Plaintiff,                  CIVIL NO. <u>1:22-cv-10533</u>

          -against-

COINSUITES, LLC, MICHAEL WIENER, &               **COMPLAINT**
MARTIN WOOD

                              Defendant.

-------------------------------------------------------------------x

       Plaintiff Technology Systems Consulting, LLC ("TSC"), by and through its attorney Lane

M. Kauder, Esq., as and for its Complaint against Defendants COINSUITES, LLC ("Coinsuites"),

MICHAEL WIENER ("Wiener"), and MARTIN WOOD ("Wood"), hereby alleges as follows:

## INTRODUCTION

       1.     This action is to enforce Defendants' obligation to pay TSC "a fee of $ 10,000 per

month" under the contract attached hereto as **Exhibit A**, *see* Ex. A at 13, ¶ IV(a), and to remediate

Defendants' actual and/or threatened misappropriation of TSC's trade secrets and work product.

## PARTIES

       2.     Plaintiff TSC is an Ohio limited liability company whose principal place of

business is in Tennessee.

       3.     Defendant Coinsuites is a Delaware limited liability company whose principal

place of business is in Pennsylvania.

       4.     Defendant Wiener is a manager of Coinsuites and a resident of Pennsylvania.

       5.     Defendant Wood is a manager of Coinsuites and a resident of Georgia.

## JURISDICTION

6.      This Court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court is a proper venue under 28 U.S.C. § 1391 because the contract giving rise to this action specifies this Court as the sole federal venue for disputes.  Ex. A at 10, ¶ 11.5.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Background

8.      On or about October 26, 2021, TSC and Coinsuites executed the contract attached hereto as **Exhibit A** (henceforth, the "Contract").

9.      Under the Contract, TSC undertook to render, and Coinsuites agreed to pay for, various services relating to Coinsuites' cryptocurrency processing business.  Ex. A at 12, ¶ 1.

10.      Among other things, the Contract states that TSC will maintain a dedicated three-person team for Coinsuites, and in return, Coinsuites will pay "a fee of $ 10,000 per month" (henceforth, a "Monthly Fee").  Ex. A at 13, ¶ IV(a).

11.      For the first eight months following TSC's and Coinsuites' execution of the Contract, TSC rendered services to Coinsuites, and Coinsuites paid TSC a Monthly Fee.

12.      However, despite continuing to receive the benefits of TSC's services and without terminating the Contract pursuant to its terms, *cf.* Ex. A at 5-6, Coinsuites failed to pay TSC any Monthly Fee in August, 2022.

13.      Further, as of the filing of this Complaint, Coinsuites had not paid TSC any Monthly Fee for the months of August, September, October, November, or December 2022.

14.      However, despite failing to pay TSC the Monthly Fee for almost five months, Coinsuites has not objectively manifested an intention to formally terminate the Contract.

15.     As of the filing of this Complaint, Coinsuites has not expressly invoked the Contract's procedure for termination, Ex. A, at 6, ¶ 5.2, nor returned TSC's proprietary information as is required "[u]pon termination" of the Contract.  Ex. A, at 6, ¶ 5.3.

16.     Rather than objectively manifesting an intent to terminate the Contract, Defendants' words and conduct manifest an intent to continue deriving use and benefit from TSC's trade secrets and work product.  As recently as November 29th, for example—just two weeks prior to the filing of this Complaint—Defendant Wiener demanded that TSC continue making TSC's code and other work product available to Coinsuites despite Coinsuites' failure to pay for them.

17.     Notwithstanding Coinsuites' refusal to pay, Defendants continue to use and exploit the proprietary, non-public, and competitively-sensitive code, software, data, analysis, trade secrets, and other work product that TSC disclosed to Defendants in reliance on the Contract.

18.     On December 1, 2022—after four months in breach of its obligation to pay TSC's Monthly Fee and just three days after Defendant Wiener demanded that TSC continue making its software and code available to Coinsuites despite Coinsuites' nonpayment—Coinsuites baselessly accused TSC of fraud and other misconduct, and demanded that TSC pay Coinsuites $140,000. *See* Coinsuites Demand Letter dated December 1, 2022, attached hereto as **Exhibit B**.

19.     Coinsuites' abrupt and self-serving fraud accusations against TSC are a half-baked and transparent attempt to retain the benefits of TSC's performance under the Contract without paying TSC the agreed-upon Monthly Fee.  Coinsuites' accusations of fraud appear to be based largely on unspecified "evidence" Coinsuites claims to possess, which, in Coinsuites' view, proves that there are "errors" in TSC's code that are "[so] rudimentary . . . even a beginner programmer should have been able to enter the code correctly."  Ex. B at 1, ¶ 3.  Moreover, the conclusion that this secret evidence not only negates Coinsuites' contractual duty to pay TSC but also entitles

Coinsuites to the (seemingly arbitrary) recovery of $140,000, plus attorney's fees, does not appear

to be based on actual legal authorities; Coinsuites' letter neglects to cite a single case or statute.

20.     Tellingly, despite claiming that TSC's proprietary code is so riddled with defects

that furnishing it to Coinsuites amounted to actionable fraud, as of the filing of this Complaint,

Coinsuites is withholding such code from TSC, is refusing to return it or formally terminate the

Contract, and is preventing TSC from accessing and/or recovering it.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS:**
<u>**BREACH OF CONTRACT**</u>

21.     Plaintiff TSC repeats and re-alleges each of the allegations contained in

paragraphs 1 through 20 as though fully set forth herein.

22.     The Contract is an express written contract, pursuant to which TSC agreed to

render to Coinsuites, and Coinsuites agreed to pay TSC for, products and services pursuant to the

terms described therein.

23.     Defendant Coinsuites breached its express obligations under the Contract by

failing to pay TSC a Monthly Fee for the months of August, September, October, November, and

December, 2022, and has repudiated its obligation to pay any Monthly Fee going forward.

24.     The initial term of the Contract is thirty-six (36) months.  Ex. A at 4, ¶ 4.1.

25.     In light of the foregoing breach(es) and repudiation of the Contract, Coinsuites is

liable to TSC for expectation damages in the amount of $280,000, plus attorney's fees.

26.     Defendants Wood and Wiener are vicariously and/or jointly liable for Coinsuites

breach by virtue of their status as managers, promoters, and *alter egos* of Coinsuites.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS:**

4

## PROMISSORY AND/OR EQUITABLE ESTOPPEL

27.     Plaintiff TSC repeats and re-alleges each of the allegations contained in paragraphs 1 through 26 as though fully set forth herein.

28.     Hypothetically and in the alternative, even if the Contract were not enforceable in some material respect, the Court should hold Coinsuites to the unambiguous promises it made to TSC in light of TSC's detrimental reliance thereon.

29.     Among other things, Coinsuites unambiguously promised to pay TSC the Monthly Fee in exchange for TSC dedicating and maintaining a 3-person team for Coinsuites.

30.     TSC dedicated and maintained a 3-person team for Coinsuites in reliance on Coinsuites' promise to pay the Monthly Fee, thereby incurring costs and expenses.

31.     Despite its unambiguous promise to pay the Monthly Fee, Coinsuites has not paid any Monthly Fee for the months of August, September, October, November, or December 2022, and has indicated a refusal to pay any Monthly Fees going forward.

32.     Accordingly, even if the Contract were not enforceable in some material respect, equity requires that the Court hold Coinsuites to the Contract's terms.

33.     Defendants Wood and Wiener are vicariously and/or jointly liable for Coinsuites breach by virtue of their status as managers, promoters, and *alter egos* of Coinsuites.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### ADDRESSED TO ALL DEFENDANTS:
## QUANTUM MERUIT

34.     Plaintiff TSC repeats and re-alleges each of the allegations contained in paragraphs 1 through 33 as though fully set forth herein.

35.     Hypothetically and in the alternative, even if the Contract were not an enforceable contract, Defendants were enriched at TSC's expense by virtue of having received services from TSC that Defendants have not paid for.

36.     The circumstances are such that equity and good conscience require Defendants to make restitution to TSC because TSC has rendered services to Coinsuites for months without any compensation whatsoever.

37.     Defendants Wood and Wiener are vicariously and/or jointly liable for Coinsuites breach by virtue of their status as managers, promoters, and *alter egos* of Coinsuites.

### AS AND FOR A FOURTH CLAIM FOR RELIEF ADDRESSED TO ALL DEFENDANTS: DECLARATORY JUDGMENT

38.     Plaintiff TSC repeats and re-alleges each of the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39.     Hypothetically and in the alternative, if this Court finds that the terms of the MSA are not incorporated into the Pricing Schedule, then TSC's intellectual property rights in the software TSC developed for Coinsuites entitle TSC to receive some or all of the profits Coinsuites has earned and/or will earn, in perpetuity, in connection with its use of any software or code that has been developed by TSC, and/or any software or code that is derived from TSC's intellectual property or otherwise incorporates features and/or elements thereof.

40.     In such case, a bona fide, justiciable, and substantial controversy exists between the Parties as to their present and future obligations, and declaratory judgment would serve a useful purpose in clarifying and/or settling such controversy and would offer relief to the Parties from uncertainty.

41.     Accordingly, if the Court finds that the MSA is not incorporated by reference into the Pricing Schedule, it should enter a declaratory judgment in favor of TSC entitling TSC to

some or all of the profits Defendants have earned and will earn henceforth in connection with

Coinsuites' use and exploitation of TSC's intellectual property.

42.     Defendants Wood and Wiener are vicariously and/or jointly liable for Coinsuites

breach by virtue of their status as managers, promoters, and *alter egos* of Coinsuites.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### ADDRESSED TO ALL DEFENDANTS:
### MISAPPROPRIATION OF SKILLS, LABOR, AND/OR WORK PRODUCT

43.     Plaintiff TSC repeats and re-alleges each of the allegations contained in

paragraphs 1 through 42 as though fully set forth herein.

44.     For the reasons set forth above, the proprietary materials that TSC disclosed to

Coinsuites in reliance on the terms of the Contract constitute trade secrets under New York law,

and Coinsuites continued use and exploitation of such trade secrets is both a direct breach of an

express written contract and the result of Coinsuites' improper means.

45.     In particular, the demand letter Coinsuites sent to TSC on December 1, 2022,

attached hereto as Exhibit B, is a bad faith attempt to gain settlement leverage over TSC and to

prolong Coinsuites' use and exploitation of confidential and competitively-sensitive proprietary

materials that TSC invested substantial time and resources in developing.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
### ADDRESSED TO ALL DEFENDANTS:
### VIOLATION OF 18 U.S.C. § 1832 *et seq.* AND/OR STATE TRADE SECRETS LAW

46.     Plaintiff TSC repeats and re-alleges each of the allegations contained in

paragraphs 1 through 45 as though fully set forth herein.

47.     Hypothetically and in the alternative, if the Master Services Agreement ("MSA")

attached hereto as pages 1 through 11 of Exhibit A is not incorporated by reference into the

Pricing Schedule attached hereto as pages 12 through 14 of Exhibit A, then Defendants are liable

under the Defend Trade Secrets Act of 2016 and/or the trade secrets law of the state which ultimately supplies the substantive rules of decision in this case.

48.     Defendants induced TSC to disclose non-public and competitively-sensitive proprietary information to Defendants by representing through words and conduct that Defendants assented to the terms of the MSA.

49.     In written and oral communications, the parties objectively manifested to one another their understanding that the terms of the MSA were incorporated by reference into the parties' Pricing Schedule and applicable to the parties' course of performance.

50.     If, after a year of manifesting assent to the MSA, the Defendants abruptly pivot and take an opportunistic position to the contrary, Defendants would be liable for the misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016 and/or analogous state law, because Defendants will have procured and profited from TSC's trade secrets using improper means, including, as described herein, false premises, misrepresentation, and attempted extortion.

51.     Accordingly, hypothetically and in the alternative, TSC is entitled to recover attorney's fees, a reasonable royalty, and a potential penalty from Defendants under federal and/or state trade secrets law.

52.     Hypothetically and in the alternative, Defendants Wood and Wiener are directly liable under federal and/or state trade secrets law, and/or vicariously and/or jointly liable for Coinsuites violation(s) by virtue of their status as the managers, promoters, and *alter egos* of Coinsuites.

        **WHEREFORE**, the Plaintiff TSC requests a trial by jury and that judgment be entered in its favor, as follows:

(a)  On the First Claim for Relief, expectation damages in the amount of $280,000 or an amount determined at trial, consequential damages in an amount determined at trial, plus costs, expenses, interest, and attorney's fees;

(b)  On the Second Claim for Relief, damages in an amount to be determined at trial, plus interest;

(c) On the Third Claim for Relief, damages in an amount to be determined at trial, plus interest;

(d) On the Fourth Claim for Relief, declaratory judgment entitling TSC to a share of any and all profits Defendants have received and/or hereafter receive in connection with Defendants' use and/or exploitation of any intellectual property belonging to TSC, plus costs, expenses, interest, and attorney's fees;

(e) On the Fifth Claim for Relief, damages in an amount to be determined a trial, imposition of a reasonable royalty in favor of TSC, plus costs, expenses, interest, and attorney's fees; and

(f) On the Sixth Claim for Relief, damages in an amount to be determined a trial, imposition of a reasonable royalty in favor of TSC, plus costs, expenses, interest, and attorney's fees; and

(f) such other and further relief as the Court may deem just and proper.

Dated:  December 14, 2022                    **LAW OFFICE OF LANE M. KAUDER, ESQ.**

By: */s/ Lane Kauder*
Lane M. Kauder (5672696)
*Attorney for Plaintiff*
730 W Nyack Rd
West Nyack, NY 10994
Phone: (212) 390-8714
lane@kauderlaw.com